IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | Case No. 09 C 204 |
| | ) | |
| CHARLES HARRIS, | ) | |
| | ) | |
| Movant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Charles Harris pled guilty to a single charge of wire fraud, and the Court imposed a within-Guidelines sentence of 168 months imprisonment. Mr. Harris appealed, challenging the sentence, but the court of appeals affirmed. *United States v. Harris*, 490 F.3d 589 (7th Cir. 2007). Mr. Harris has now filed a motion under 28 U.S.C. § 2255 to vacate the judgment and sentence. For the reasons stated below, the Court denies Mr. Harris's motion.[1]

## Background

The United States Attorney charged Mr. Harris in a one-count information alleging wire fraud. In June 2005, Mr. Harris appeared in court, waived his right to indictment, and pled guilty. There was no written plea agreement. Mr. Harris affirmed

---

[1] The Court denies Mr. Harris's motion to expand the record because he does not explain in the motion what he wants to add to the record and denies his motion for an evidentiary hearing because he has not shown an evidentiary hearing is necessary or appropriate to enable the Court to address his claims.

under oath that his only agreement with the government was an understanding relating to restitution and forfeiture. June 23, 2005 Tr. 10, 15, 19-20.

During the guilty plea hearing, Mr. Harris admitted that he was the principal of several investment companies, all of which bore the name "Tradewinds." *Id.* at 22. He admitted that he obtained funds from investors and pooled and invested them, purportedly in currencies, bonds, and equities. *Id.* at 23. Mr. Harris admitted that he made material misstatements and omissions to investors and prospective investors about how the funds would be used, the profitability of Tradewinds, and the status of each investor's investment. *Id.* at 23-24. All told, Mr. Harris admitted, he fraudulently obtained over $15 million from over fifty investors. *Id.* at 24. He admitted that he used some of the money raised from later investors to pay off earlier investors to keep the scheme going. *Id.* at 24-25. Altogether, Mr. Harris admitted, the scheme caused a net loss to the investors of more than $10 million. *Id.* at 25. Mr. Harris admitted that he told investors and prospective investors that their funds would be used for trading in currency, bond, and equity products, when in fact he invested only $4 million of the funds. *Id.* He also admitted that he used millions of dollars of the investors' funds for his personal benefit, including the purchase of homes in Winnetka, Illinois and Florida, luxury automobiles, and two ocean-going vessels, as well as the payment of vacation expenses, chartered flight expenses, and other personal expenses. *Id.* at 25-26, 28-29. Mr. Harris admitted lying to investors about making profits and the profitability of his trading activity on their behalf. *Id.* at 26. He also admitted that he used the mail and interstate wire communications to further the scheme, including a particular interstate

2

wire communication on March 4, 2004. *Id.* at 27, 28. Mr. Harris specifically admitted that he had acted with the intent to defraud. *Id.* at 30.

The Court later calculated the sentencing range under the Sentencing Guidelines as 151 to 188 months and imposed a sentence of 168 months, roughly in the middle of the range. Mr. Harris appealed his sentence. He argued that the Court had erroneously imposed a Guidelines enhancement for offenses that substantially jeopardize the safety and soundness of a financial institution, arguing that the Tradewinds entities did not meet the Guidelines' definition of a financial institution. He also argued that the Court had violated his constitutional rights by basing his sentence on the "financial institution" determination even though no jury had found Tradewinds to be a financial institution. He also argued that the Court had failed to take proper account of mitigating circumstances, had imposed a disparately high sentence as compared with various high-profile federal fraud prosecutions, and had imposed an unreasonably high sentence under the circumstances. The court of appeals rejected each of these arguments and affirmed the sentence. *Harris*, 490 F.3d at 594-97.

In his section 2255 motion, Mr. Harris asserts three claims. His first claim is that he received ineffective assistance of counsel before this Court and on appeal. His second claim is that the sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment because it was excessive as compared with sentences in various high-profile federal fraud prosecutions. His third claim is that the Court's Guideline calculation was based on certain errors. This claim appears to include a contention that Mr. Harris' appellate counsel rendered ineffective assistance by failing to argue those errors on appeal.

**Discussion**

The Court deals with Mr. Harris's third claim first. The claim appears to have two parts. First, Mr. Harris says that the Court improperly imposed an "abuse of trust" enhancement, which he says duplicates the underlying offense of fraud. Second, he argues that because Tradewinds was considered a financial institution, its investors could not properly be counted as separate victims for purposes of the number-of-victims enhancement that the Court imposed.

Mr. Harris could have raised both of the underlying Guidelines issues on appeal, so he cannot assert them in a collateral attack. *See, e.g., Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). These claims likewise cannot form the basis of a successful claim of ineffective assistance of trial or appellate counsel. The reason is that Mr. Harris suffered no prejudice due to his attorney's failure to assert these arguments. Improper double counting occurs when a court imposes two or more upward Guidelines adjustments based on the same set of facts. *See, e.g., United States v. Haynes*, 582 F.3d 686, 710 (7th Cir. 2009). The presence of some factual overlap is insufficient to constitute improper double counting if the two enhancements address distinct aspects of a defendant's conduct. *Id.* at 711.

The Guidelines enhancements the Court imposed did not amount to improper double-counting. First, application of the abuse of trust enhancement under U.S.S.G. § 3B1.3 in a fraud prosecution like this one is not impermissible double-counting, because abuse of trust is not an element of the crime of wire (or mail) fraud. *See, e.g., United States v. Arnaout*, 431 F.3d 994, 1000 (7th Cir. 2005). Second, the court of

4

appeals affirmed this Court's determination that Tradewinds was a "financial institution" for Guidelines purposes based on the fact that Mr. Harris represented it was an entity – a hedge fund – engaged in the business of investing in the securities of other entities. *Harris*, 490 F.3d at 595-96. The fact that Tradewinds was an investment company overlapped to some extent with the fact that it had investors, but it is logically distinct from the question of the number of investor / victims who were harmed. The underlying circumstances that made Tradewinds a financial institution for Guidelines purposes are sufficiently distinct from the fact that its investors suffered harm to avoid any double-counting problem under the Guidelines.

Mr. Harris's second claim is that the Court's sentence was unreasonably harsh by comparison with the sentences in other high-profile federal fraud prosecutions that, he contends, involved more aggravated conduct and/or more serious harm. Mr. Harris asserted this same argument on appeal as part of his contention that the sentence was unreasonably harsh as a statutory matter under 18 U.S.C. § 3553(a). Though he now couches this as an Eighth Amendment claim, the result is no different. The Eighth Amendment prohibits only sentences that are grossly disproportionate to the crime, *see, e.g., Solem v. Helm*, 463 U.S. 277, 288 (1983), and Mr. Harris cites no authority for the proposition that a sentence in the middle of a range established by the Sentencing Commission for his offense can be considered grossly disproportionate as a constitutional matter. Mr. Harris committed a crime that involved repeated misrepresentations to numerous individuals over an extended period of time that caused them to lose large amounts of money, as well as ongoing fraudulent activity to conceal his improper conduct. The Court acknowledges that a fourteen year prison

sentence is significant punishment, but Mr. Harris cannot establish that his sentence violated the Eighth Amendment or that he was prejudiced by his appellate attorney's failure to make that argument on appeal.[2]

Mr. Harris's only remaining claim is another claim of ineffective assistance of counsel. He claims that his lawyers breached his attorney-client privilege by turning over information that enabled the government to argue successfully that he should be denied bail; he was given bad advice about the length of the prison term he should expect; and mitigating information was not presented at the time of sentencing.

Each of these contentions is lacking in merit. The purpose of a section 2255 motion is to challenge the conviction and sentence. A claim of denial of bail is not cognizable. *See, e.g., Kett v. United States*, 722 F.2d 687, 690 (11th Cir. 1984). Mr. Harris has not attempted to show that the denial of bail impacted in any way the underlying conviction or sentence. As a result, he cannot have suffered the sort of prejudice required to give him an actionable claim of ineffective assistance of counsel on this basis.

Mr. Harris's contention that he was given bad advice about the length of the prison term he was likely to face and that he would not have pled guilty absent this advice is undermined by his sworn testimony at the guilty plea hearing that there were no promises that formed the basis of his decision to plead guilty. June 23, 2005 Tr. 15.

---

[2] Mr. Harris's claim in his amended motion that his rights of due process and equal protection were infringed because the Sentencing Guidelines were purportedly applied in a different way in his case as compared with a case in the Fifth Circuit is deficient on its face. The facts underlying the two cases are different, and thus Mr. Harris is not situated similarly to the defendant in the Fifth Circuit case.

The Court is not required to credit Mr. Harris's attempt to sidestep this sworn admission, particularly given the absence of a compelling justification for the contradiction. *See, e.g., Wozny v. Grams*, 539 F.3d 605, 609-10 (7th Cir. 2008); *Tyra v. United States*, 270 Fed. Appx. 410, 415-16 (7th Cir. 2008).

Finally, the Court agrees with the government that Mr. Harris's counsel did not perform deficiently in failing to present information that he contends was mitigating. As the government argues, *see* Govt. Resp. at 6, presentation of these arguments might have undermined any claim of acceptance of responsibility or remorse. In the particular circumstances of this case, counsel did not perform below an objective level of reasonableness in failing to present this information, nor has Mr. Harris shown he was actually prejudiced by counsel's failure to make these arguments.

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment in favor of the United States. The Court denies defendant's motion to expand the record and his motion for an evidentiary hearing [docket nos. 31 & 32].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 1, 2010